# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILLY LOUIS BOOKER,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>R/N M. ROSE, et al.,<br><br>　　　　　Defendants. | CV F- 03-6746 OWW DLB P<br><br>FINDINGS AND RECOMMENDATIONS RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br>[DOC #33] |

I.　　Procedural History

Plaintiff Billy Louis Booker ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on plaintiff's complaint filed December 4, 2003, against defendants Rose, Loyche, Morales, Cruz, Garrison and Lopez. Plaintiff claims that on June 2, 2003, defendant Rose subjected him to excessive force in violation of the Eighth Amendment and that defendants Loyche, Morales, Cruz, Garrison and Lopez denied his requests for medication in violation of the Eighth Amendment.

On March 14, 2005, defendants Cruz, Garrison, Lopez, Loyche, Morales and Rose ("defendants") filed a motion for summary judgment. Plaintiff has not filed an opposition to the

motion or otherwise responded.

II.      Legal Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©.  Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56©, is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56©. The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

///

III.  Undisputed Facts[1]

1.  Billy Louis Booker (C20649) is a California prisoner who was transferred from Folsom State Prison (FSP) to Avenal State Prison (ASP) on June 2, 2003.  Defendants' Exhibit A, Attachment 1 (Decl. of C. Goodman and attached CDC Central File Records) (DX A-1), p.5. He is currently housed at the California State Prison - Solano (CSP-Solano).  Id. at p.7.

2.  Prior to his transfer from FSP, Booker had been treated for hepatitis C with pegylated interferon and ribavarin, but the medications were discontinued on March 5, 2003, due to adverse side effects (paycytopenia) to the treatment.  Defendants' Exhibit B, Attachment 1 (Decl. Of L. King and attached Unified Health Records), pp.2-3, 8, 12 and 31.  Booker had also been diagnosed with recurrent low back pain and sciatica for which he had been prescribed Neurontin (gabapentin), 300 mg., t.i.d. for 30 days and a follow up when the prescription ran out.  Id. at pp. 4 and 18.  Booker was also diagnosed with a depressive disorder NOS (not otherwise specified) and anxiety for which he was prescribed Zoloft (sertraline), 50 mg., q.a.m. for 90 days.  Id. at pp. 17 and 31.

3.  Booker claims that he did not receive his morning dose of his prescribed medications the morning he left FSP.  Compl. ¶ 4.  Medication administration records state that he received a dose of gabapentin on the evening of June 1, but that he was listed as a "no show" for that medication and sertraline on the morning of June 2, when he was transferred.  Id. at p. 35. Booker claims he was shackled during the four to five hour bus ride from FSP to ASP which aggravated his lower back.  Compl. ¶ 4.

4.  Booker claims he arrived at ASP shortly before 4:00 p.m. on June 2, 2003.  Compl., ¶¶ 6-7. Booker told a medical technical assistant (MTA) in Receiving and Release (R&R) that he had

---

[1] facts and plaintiff's verified complaint.  Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 199 Plaintiff neither admitted or denied the facts set forth by defendants as undisputed nor filed a separate statement of disputed facts.  Local Rule 56-260(b).  Therefore, the court compiled the statement of undisputed facts from defendants' statement of undisputed 8) (verified complaints and oppositions constitute opposing affidavits for purposes of the summary judgment rule if they are based on facts within the pleader's personal knowledge).  Because plaintiff neither submitted his own statement of disputed facts nor addressed defendants' statement of undisputed facts, the court accepts defendants' version of the facts where plaintiff's verified complaint is not contradictory.

1    not received his medications when he left FSP and that his back was inflamed and in pain as
2    a result of the bus ride. Id.  The MTA told him to report to the regular "pill call" in the
3    medical clinic at 6:50 p.m. in his assigned facility where the medications would be dispensed.
4    Id.
5  5. Booker claims he was housed in the gymnasium in Facility III, but was not given his
6    medications at the evening "pill call," but was instead told to return the following day.
7    Compl., ¶ 8.  Booker was assigned to a top bunk, but when he complained to Third Watch
8    staff, he was told that bed changes were only made on Second Watch. Id. at ¶¶ 9-10.  Booker
9    claims he experienced pain climbing onto the top bunk. Id. at ¶ 11.
10 6. The following morning, June 3, 2003, Booker went to the medical clinic, opened the door,
11   and went in. Compl., ¶ 12.  Booker did not have authorization to enter the clinic and was
12   yelling for his medication when he entered the clinic. DX A-1, p. 8.  Nurse Rose ordered him
13   to step out of the clinic and shut the door. Id.  Booker stepped out, but did not completely
14   shut the door. Id.  Booker claims that Nurse Rose "pushed him in him solar-plexus in a
15   punching manner" with her finger, asked him whether he wanted a "115" and "poked" him
16   out the door. Id. at pp. 9, 12 and 16.  Booker weighed over 200 lbs. Id. At pp. 5-8.  Booker
17   tripped over the threshold as Nurse Rose "slammed the door." Id at p. 16.  Nurse Rose
18   denied touching Booker.
19        Booker then began banging and kicking the door and yelling. DX A-1, pp. 9 and 11-
20   12.  MTA Loyche went to the door to see what was happening. Id at p. 8.  When MTA
21   Loyche opened the door, she could not see Booker and the door hit him, causing him to take
22   a step or two backward. Id.  Booker then yelled: What the fuck is your problem?"  What kind
23   of fucking nurse are you?" Id.  Booker then explained that he was just trying to get his
24   medications. Id. at p. 12.  At that point, Correctional Officer Morales came out of the nearby
25   dining hall when he heard Booker yelling. Id. at p. 8; Compl. ¶ 14.  Officer Morales told
26   Booker to calm down and then told Booker to follow him to the Support Office. Id.  In the
27   office, Booker told Officer Morales, Correctional Sgt. Cruz, and Correctional Lt. Lopez about
28

his medication problem and that he been "assaulted" by Nurse Rose. Compl.¶ 15. Booker was then handcuffed and placed in administrative segregation. Id. at ¶ 17; DX B-1, pp. 6-7.

7. Booker was examined for injuries by MTA Dupree who did an unclothed body examination and noted that he had no visible injuries or distress. DX B-1, pp. 6-7.

8. The same day, Booker's prescriptions for Neurontin, 300 mg., t.i.d. and Zoloft, 50 mg., q.a.m. for 30 days were written. DX B-1, p. 19. Pharmacy records indicate that the prescriptions were to start June 4. Id. at p. 37. Booker claims that he did not receive the medications until June 7. Medication administration records state that he started receiving Neurontin on the evening of June 4, but that he initially refused to take Zoloft on June 7. Id. at pp. 32-33 and 37. At that time, the prescription for Zoloft was discontinued, but it was again ordered on July 1, when Booker agreed to take it. Id. at pp. 19 and 34.

IV. Discussion

    A.    Excessive Force Claim

"Whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishment Clause [of the Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992) (citing Whitley v. Albers, 475 U.S. 312, 320-21 (1986)). "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between the need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Hudson, 503 U.S. at 7. The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

Not "every malevolent touch by a prison guard gives rise to a federal cause of action. Id. at 9. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Id. (citing Johnson v. Glick, 481 F.2d 1028, 1033 (2nd Cir. 1973) (cert. denied sub nom. Johnson, 414 U.S. 1033 (1973)). "The Eighth

Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Id. at 9-10.

Defendant Rose argues that she did not use excessive force and further that any force used was de minimis and did not violate the Eighth Amendment.  Defendants argue that plaintiff entered the medical clinic without authorization, was unhappy that he had not received his medication, and was yelling.  Defendants' Statement of Undisputed Facts ("DUF") No. 6.  Defendants also point out that Nurse Rose asked him to leave but he did not completely close the door.  DUF 6.  Defendants further note that plaintiff claims that Nurse Rose pushed Booker, who weighed over 200 pounds, with her finger.  DUF 6.  Booker was examined for injuries but none were found.  DUF 7.  Defendants argue that at most, minimal force was used to enforce lawful order and plaintiff was not injured and therefore, defendant Rose did not use excessive force in violation of the Eighth Amendment.

In his complaint, with respect to defendant Rose's actions, plaintiff alleges that she "repeatedly punched in the plaintiff's chest area until plaintiff was knocked backwards and clear out of the medical clinic office as the door was slammed in the plaintiff's face, further aggravating plaintiff's back injury."  Complaint at p. 4.

It is undisputed that plaintiff went to the medical clinic and opened the door without authorization to enter the clinic and was yelling for his medication.  It is also undisputed that plaintiff was ordered out of the clinic and while he stepped out, he did not completely close the door.  Insubordination is a matter taken very seriously within the confines of an institutional setting.  Plaintiff's refusal to comply with direct orders created a need for the application of force to gain plaintiff's compliance.  While the level of force is disputed, the force at issue was employed for the very purpose of gaining plaintiff's compliance with the order.  When an inmate refuses to comply with the order of a staff member, a threat may be reasonably perceived by staff.  Under these circumstances, defendant Rose could reasonably have perceived plaintiff's disobedience to be a threat requiring the use of force.  Defendant Rose "punching" plaintiff  in the chest with her finger

was not the sort of force "repugnant to the conscience of mankind" as required to prevail on an Eighth Amendment claim.  The force applied by defendant, Rose was reasonable under the circumstances.  Viewing the evidence in the light most favorable to plaintiff, the allegations that defendant Rose "punched" him in the chest with her finger simply do not support a claim for relief under section 1983 for use of excessive physical force.  The Court finds that the force applied by defendant was "a good-faith effort to maintain or restore discipline," and was not applied "maliciously and sadistically to cause harm."  Hudson, 503 U.S. at 7, and that defendant Rose is entitled to judgment as a matter of law on plaintiff's excessive force claim.

B.    Deliberate Indifference to Plaintiff's Serious Medical Needs

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).  The "deliberate indifference" standard involves an objective and a subjective prong.  First, the alleged deprivation must be, in objective terms, "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Second, the prison official must act with a "sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm.  Farmer v. Brennan, 511 U.S. at 837.  A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." Id.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing Estelle, 429 U.S. at 105-06.  "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310,

1316 (9th Cir. 1995); McGuckin v. Smith, 974 F.2d 1050, 1050 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  Even gross negligence is insufficient to establish deliberate indifference to serious medical needs.  See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).  A prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference.  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

In his complaint, plaintiff alleges that defendants Loyche, Morales, Cruz, Garrison and Lopez refused his request for his prescribed medications on June 2, 2003 and as a result, his receipt of medication was delayed until June 7.

It is undisputed that plaintiff was transferred from FSP to ASP on June 2, 2003.  DUF 1.  Prior to his transfer he been diagnosed with recurrent low back pain and sciatica for which he had been prescribed Neurontin, 300 mg, t.i.d. for 30 days and a follow up when the prescription ran out.  DUF 2.  Plaintiff asserts that when he arrived at ASP, he advised medical staff that he had not received his medication and he was in "excruciating pain."  He was told to report to the pill call.  He alleges that he was turned away from the pill call on June 2, 2003 and asked to return the following day.  However, it was not until June 3, 2003 that he alleges he encountered defendants.  He alleges that defendant Loyche told him to shut up and he was escorted out of the medical clinic by defendant Morales.  He alleges that he was repeatedly denied his medications on this day by the named defendants.

Defendants have presented evidence that a prescription for Neurontin, 300 mg. t.i.d. and Zoloft, 50 m.g., q.a.m. for 30 days were written for plaintiff on June 3, 2003.  DUF 8.  Pharmacy records indicate that the prescription was to start June 4, 2003 and he initially refused to take Zoloft on June 7.  Id.  At that time the prescription for Zoloft was discontinued but it was again ordered on July 1.  Id.  On June 12, 2003, the Clinical Psychologist noted that plaintiff was taking Neurontin but refusing to take Zoloft.  D Ex B, p. 32.

Defendants contend that although plaintiff claims that he did not receive the medications until June 7, medication administration records show that he started receiving Neurontin on the

evening of June 4 and therefore there is no evidence that defendants caused any delay in his receipt of his medications. Defendants further point out that there is no evidence of any harm caused by the alleged delay.

The court finds that defendants have met their initial burden of informing the court of the basis for the motion, and identifying those portions of the record which they believe demonstrate the absence of a genuine issue of material fact. The burden therefore shifts to plaintiff to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). As stated above, in attempting to establish the existence of this factual dispute, plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).

Plaintiff has not submitted any evidence in opposition to the motion for summary judgment. However, the Court must view the facts in the light most favorable to him in deciding this motion. Doing so, there exists a factual dispute between the parties concerning when plaintiff actually received his medication after arrival at ASP. While defendants submit medical records indicating that prescriptions were written on June 3 and medications were given to him on the evening of June 4, plaintiff states that he did not receive his medication until June 7.

However, assuming there was delay and plaintiff did not receive medication until June 7, where a prisoner is alleging a delay in receiving medical treatment, as plaintiff is here, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin, 974 F.2d at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)). There is no evidence plaintiff suffered harm as a result of the alleged delay. Plaintiff simply states that defendants denied his requests on June 2 and that he did not receive his medication until June 7. Complaint at p. 5. Plaintiff has submitted no evidence that gives rise to a triable issue of fact concerning whether the alleged delay in receiving medication led to further harm. Thus, even if plaintiff did not receive his medication prior to June 7,

there is no evidence any delay led to any further harm.  Accordingly, the court finds that defendants are entitled to judgment as a matter of law on this claim.

### E. Conclusion

Based on the foregoing, it is HEREBY RECOMMENDED that defendants' motion for summary judgment, filed March 16, 2005, be GRANTED, thus concluding this action in its entirety, and judgment be entered for defendants and against plaintiff.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   November 17, 2005                    /s/ Dennis L. Beck
3b142a                                         UNITED STATES MAGISTRATE JUDGE